IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA
601 Market Street, Room 2609, Philadelphia, PA 19106

| | |
|---|---|
| MALIBU MEDIA, LLC., <br> Plaintiff, <br> vs. <br> DOES 1-22, <br> Defendants. <br> _____/ | CASE No. 5:12cv-03139-TJS <br><br> MOTION TO DISMISS AND/OR SEVER COMPLAINT AGAINST JOHN DOE #10 AND TO VACATE THE ORDER GRANTING LEAVE TO SERVE THIRD-PARTY SUBPOENAS AND TO QUASH THE SUBPOENA AGAINST SAME |

## MOTION TO DISMISS AND/OR SEVER COMPLAINT AGAINST JOHN DOE #10 AND TO VACATE THE ORDER GRANTING LEAVE TO SERVE THIRD-PARTY SUBPOENAS AND TO QUASH THE SUBPOENA AGAINST SAME

I recently received a letter from my ISP (Comcast) regarding a subpoena for CASE No. 5:12cv-03139-TJS, advising me that it had been subpoenaed to release my identity and contact information in this matter. That prompted me to research the type of claim brought by Malibu Media, LLC and similar cases brought by others. I found that in the vast majority of cases associated with Malibu Media, LLC, when the subpoenaed information is turned over to the plaintiffs, the defendants, guilty or innocent, receive demand letters. These letters typically demand from $2500 to $7500 and more for settlement. The goal of the plaintiffs in these cases appears to be to force settlements without incurring any of the burdens involved in proving their cases. As a "John Doe" in this matter, I have standing to challenge the Subpoena and I respectfully request that I be allowed to make this motion anonymously without revealing my personally identifying information as to do otherwise would defeat the purpose of this motion.

This motion is based on three factors: (1) improper joinder, (2) the person using a device connected to the internet at any given time is not necessarily the individual to whom the involved Internet Protocol address (IP address) is registered, (3) the inability to accurately

identify who actually accessed the internet through given IP and MAC addresses, introducing an unacceptable degree of uncertainty with regard to the identification of actual wrongdoers.

## INTRODUCTION

Plaintiff's counsel, Christopher Fiore, is using improper joinders in mass lawsuits alleging copyright infringement through BitTorrent in an effort to shift the burden of filing costs to the Court. This tactic appears to be part of a systemic effort to build a business model of coercing quick and profitable contingency-fee settlements based on weak allegations of copyright infringement and questionable use of the legal system from defendants who are cowed by the potential threat of a massive award of statutory damages and attorneys fees, who are ignorant about defenses, and perhaps most importantly, who are leery of stigma which attaches to defendants when identified and associated with illegally downloading pornographic films.

Information retrieved from PACER and RFCExpress (http://www.rfcexpress.com) indicates that Mr. Fiore filed 26 lawsuits on behalf of Malibu Media, LLC in the Pennsylvania Eastern District Court alone in the last 5 months, with 445 John Does. An additional 5 other suits on behalf of the Plaintiff were filed in the district by another attorney during the same period.

Altogether, these 31 Malibu Media, LLC lawsuits involve at least 486 defendants and have been assigned to 15 different judges in the same district Court. Thus far in 2012, Malibu Media LLC has filed more than 225 suits in Pennsylvania (ED), California, Colorado, the District of Columbia, Florida, Maryland, New York, Texas and Virginia against numbered Does using similar tactics. These suits collectively name over 2200 defendants. Not only is Plaintiff taking advantage of the courts to exact settlements from Defendants, Plaintiff is abusing the procedural rules, i.e., the Rule 20 joinder rule, to avoid the cost of appropriately filing individual cases. In this case, where Plaintiff has mis-joined all twenty-two defendants, the filing fees alone for each of the 22 putative Defendants would be over $7,700.

In light of the obvious abuse of the judicial system as well as the significant risk of misidentification of potential defendants as discussed below, Doe Defendants 2-22 should be severed from this action and the Order granting leave to serve third-party subpoenas should be vacated and the subpoena should be quashed.

## ARGUMENT

### 1) Plaintiff Has Improperly Joined 22 Individual Defendants Based on Entirely Disparate Alleged Acts

The Plaintiff's joinder of 22 defendants in this single action is improper and runs the tremendous risk of creating unfairness and denying individual justice to those sued. Mass joinder of individuals has been disapproved by federal courts in numerous cases, and similar cases, such as *CP Productions, Inc. v. Does 1-300 case 1:2010cv06255,* have been dismissed. In that case the court notes before dismissal:

> [I]f the 300 unnamed defendants have in fact infringed any copyrights (something that this court will assume to be the case, given the Complaint's allegations that so state), each of those infringements was separate and apart from the others. No predicate has been shown for thus combining 300 separate actions on the cheap — if CP had sued the 300 claimed infringers separately for their discrete infringements, the filing fees alone would have aggregated $105,000 rather than $350.

In the Northern District of California, these nearly identical BitTorrent cases have been severed for improper joinder:

> *Pacific Century International LTD v. Does 1-101 case 4:2011cv02533 (severed does 2-101)*
> *IO Group, Inc. v. Does 1-435 case 3:2010cv04382 (severed does 2-435)*
> *Diabolic Video Productions, Inc v. Does 1-2099 case 5:2010cv05865 (severed Does 2-2099)*
> *New Sensations, Inc v. Does 1-1768 case 5:2010cv05864 (severed Does 2-1768)*

In a recent order (6 Sep 2011) by Judge Bernard Zimmerman, Northern District of California, 5010 John Does were dismissed from *On The Cheap, LLC, v. Does 1-5011, case C10-4472 BZ,*

due to improper joinder. Judge Zimmerman stated the following in his order:

> "This Court does not condone copyright infringement and encourages settlement of genuine disputes. However, Plaintiff's desire to enforce its copyright in what it asserts is a cost-effective manner does not justify perverting the joinder rules to first create the management and logistical problems discussed above and then to offer to settle with Doe defendants so they can avoid digging themselves out of the morass plaintiff is creating."

As one court noted:

> Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works. John Does 3 through 203 could be thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and depriving them, and their artists, of the royalties they are rightly owed. . . . Wholesale litigation of these claims is inappropriate, at least with respect to a vast majority (if not all) of Defendants.[1]

Rule 20 requires that, for parties to be joined in the same lawsuit, the claims against them must arise from a single transaction or a series of closely related transactions. The Plaintiff is under a strict burden in this matter and cannot assert that the Defendants committed the same violation in the same way. Specifically:

> Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action. Fed. R. Civ. P. 20.

Joinder based on separate but similar behavior by individuals allegedly using the Internet to commit copyright infringement has been rejected by courts across the country. In *LaFace Records, LLC v. Does 1-38*, No. 5:07-CV-298-BR, 2008 WL 544992 (E.D.N.C. Feb. 27, 2008), the court ordered severance of lawsuit against thirty-eight defendants where each defendant used the same ISP as well as some of the same peer-to-peer ("P2P") networks to

---

[1] *BMG Music v. Does 1-203*, No. Civ.A. 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004) (severing lawsuit involving 203 defendants).

commit the exact same violation of the law in exactly the same way. The court explained: "[M]erely committing the same type of violation in the same way does not link defendants together for purposes of joinder."[2]. In *BMG Music v. Does 1-4*, No. 3:06-cv-01579-MHP, 2006 U.S. Dist. LEXIS 53237, at *5-6 (N.D. Cal. July 31, 2006), the court *sua sponte* severed multiple defendants in action where the only connection between them was allegation they used same ISP to conduct copyright infringement. See also *Interscope Records v. Does 1-25*, No. 6:04-cv-197-Orl-22DAB, 2004 U.S. Dist. LEXIS 27782 (M.D. Fla. Apr. 1, 2004) (magistrate recommended *sua sponte* severance of multiple defendants in action where only connection between them was allegation they used same ISP and P2P network to conduct copyright infringement); *BMG Music v. Does 1-203*, No. Civ.A. 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004) (severing lawsuit involving 203 defendants); General Order, *In re Cases Filed by Recording Companies*, filed in *Fonovisa, Inc. et al. v. Does 1-41* (No. A-04-CA-550 LY), *Atlantic Recording Corporation, et al. v. Does 1-151* (No. A-04-CA-636 SS), *Elektra Entertainment Group, Inc. et al. v. Does 1-11* (No. A-04-CA-703 LY); and *UMG Recordings, Inc., et al. v. Does 1-51* (No. A-04-CA-704 LY) (W.D. Tex. Nov. 17, 2004), RJN Ex. A, (dismissing without prejudice all but first defendant in each of four lawsuits against a total of 254 defendants accused of unauthorized music file-sharing); Order Granting in Part and Denying in Part Plaintiffs' Miscellaneous Administrative Request for Leave to Take Discovery Prior to Rule 26 Conference, *Twentieth Century Fox Film Corp., et al., v. Does 1-12*, No. C-04-04862 (N.D. Cal Nov. 16, 2004) (in copyright infringement action against twelve defendants, permitting discovery as to first Doe defendant but staying case as to remaining Does until plaintiff could demonstrate proper joinder).

Plaintiff claims all of the Pennsylvania defendants are properly joined because they illegally downloaded/shared the film (Like the First Time) via BitTorrent. Plaintiff only provided the Court Exhibit A, showing the IP addresses of the defendants and a specific "hit date (UTC)," it was observed illegally downloading/sharing the film, and offered no other support for the claim that the Defendants were "liable for the infringing activities of each of the other Defendants". Plaintiff incorrectly states the infringement was accomplished by the

---

[2]*LaFace Records*, 2008 WL 544992, at *2

Defendants acting in concert with each other. Plaintiff's Exhibit A shows the entire timeframe of the activity, but not which, if any, IP addresses acted in concert. The nature of BitTorrent does not support Plaintiff's claim that all John Doe IP addresses acted together for the entire period of approximately two months, or that any of the Defendants acted together at any point. The exhibit provided shows John Doe #6 was the first claimed instance of downloading/sharing by defendants identified by plaintiff's agents on 3/17/2012 at 20:37 Coordinated Universal Time (UTC). The last instance of downloading/sharing identified by Plaintiff's agents was on 5/9/2012, at 20:35 UTC, by John Doe #4, thus joinder is inappropriate, given the extended period during which the alleged infringement took place.

Even in the unlikely event that two or more defendants were simultaneously using BitTorrent, the decentralized nature and operation of BitTorrent precludes any inference that the defendants participated in or contributed to the downloading of each other's copies of the work at issue. The extended timespan of the "hits" alleged in the complaint further undermines the Plaintiff's allegation that the 22 Does were acting in concert, as the likelihood of concerted action among BitTorrent users hours, days, or weeks apart from one another is minuscule. One court acknowledged this by writing:

> BitTorrent's appeal stems from the speed with which peers can download complete files, so it is extremely unlikely that one Doe would remain in the swarm long enough to have direct contact with another Doe who entered hours later. Plaintiff has not shown that the defendants acted in concert simply by appearing the same swarm at completely different times. Therefore, the court cannot find that "a single transaction or series of closely related transactions" connects these 90 Does and makes joinder proper.
> Hard Drive Productions, Inc. v. Does 1-90, supra, 2012 WL 1094653 at *6. See also Hard Drive Productions, Inc. v. Does 1-188, supra, 809 F.Supp.2d at 1163

Federal courts have previously severed multiple defendants in cases where the only similarity between the defendants is the use of the same internet service provider and file sharing protocol to allegedly share files.[3] A number of other courts have made the same order

---

[3] Interscope Records v. Does 1-25, 2004 U.S. Dist. LEXIS 27782, (M.D. Fla. 2004); see BMG Music v. Does 1-4, 2006 U.S. Dist. LEXIS 53237 (N.D. Cal. July 31, 2006).

requiring the severing of defendants in similar file sharing lawsuits.[4] They all support the rationale that is present in this matter. In a similar case, an Illinois court notes:

> There are no facts to support the assertion that defendants conspired with each other to reproduce plaintiffs works... and the allegations that defendants simply used the same peer-to-peer network to download plaintiff's works-on many different days at many different times-is insufficient to allow plaintiff to litigate against hundreds of different Doe defendants in one action.[5]

It is significant that Plaintiff does not allege (nor could it allege in good faith) that any of the "other" swarm members with whom the 22 Does communicated and interacted were the Does in Plaintiff's Exhibit A.

There is no claim that any of the Doe defendants in the instant case actually transferred pieces of the copyrighted work to or from one another. This is significant since the mechanism of the the BitTorrent Protocol means that it is not necessary that each of the Does participated in or contributed to the downloading of *each other's* copies of the work at issue--or even participated in or contributed to the downloading by *any* of the Does. Any "pieces" of the work copied or uploaded by any individual Doe may have gone to any other Doe or to any of the

---

[4] Millennium Tga Inc. v. Does 1-21, No. 11-2258 SC (N.D. Cal. May 12, 2011)("Plaintiff must prove that the facts alleged--if assumed to be true--could 'plausibly give rise to an entitlement to relief.'... Plaintiff fails to make the required showing... This Court does not issue fishing licenses.'"); Boy Racer, Inc. v. Does 1-60, No. C 11-01738 SI (N.D. Cal. Aug 19. 2011)("The nature of the BitTorrent protocol does not justify joinder of these otherwise unrelated Doe defendants"); IO Group, Inc. v. Does 1-435, No. 10-4382, 2011 WL 1219290; (N.D. Cal. Jan. 10, 2011); ("The court is equally unmoved by the plaintiff's assertion that joinder at this stage serves the interests of judicial economy... this issue goes to the plaintiff's interests, not the court's.") ; On the Cheap, LLC v Does 1-5011, No 3:10-cv-04472-BZ (N.D. Cal Sept 6, 2011) ("If I allow this matter to proceed... it will create a logistical nightmare with hundreds if not thousands of defendants filing different motions, including dispositive motions, each raising unique factual and legal issues that will have to be analyzed one at a time."); West Coast Productions v. Does 1-2010, No. 3:10-CV-93 (N.D. W.Va., Dec. 16, 2010)

[5] Lightspeed v. Does 1-1000, No. 10 C 5604 (N.D. Ill. March 31, 2011).

potentially thousands who participated in a given swarm[6] who are not parties to the lawsuit. These transfers all take place without any notice, direction, or volition on the part of any of the Does. Indeed, a basic principle of the BitTorrent protocol is that transactions between members of the "swarm" are randomized, automated, and anonymous. While each alleged infringer may have received pieces of plaintiff's copyrighted work from various other swarm members, there is no evidence of any connection between the alleged infringers.

For this reason, where a plaintiff seeks to join several defendants in an action based on filesharing activity, a plaintiff must allege facts that permit the court at least to infer some actual, concerted exchange of data between those defendants.[7]

Not only does the complaint here fail to allege an actual, concerted exchange of data between the twenty-two Doe defendants but the fundamental nature of the BitTorrent protocol would make such an allegation wholly implausible. (Patrick Collins, Inc. v. Does 1-23, 2012 WL 1019034 at *4 (E.D.Mich. Mar. 26, 2012))

The very widespread use of BitTorrent[8], coupled with the BitTorrent protocol's ability to quickly share files further demonstrates that it is implausible that any of the Doe defendants were simultaneously sharing pieces of plaintiff's Work with each other.

In an attempt to satisfy the "same transaction or series of transactions" requirement, Plaintiff resorts to alleging that the Does "copied a piece of Plaintiff's copyrighted Work identified by [a] Unique Hash Number.". This allegation, however, is insufficient for joinder:

---

[6] Hard Drive Productions, Inc. v. Does 1-188, 809 F.Supp.2d 1150, 1163 (N.D. Cal. 2011)

[7] Malibu Media, LLC v. Does 1-23, 2012 WL 1999430 at *3 (E.D.Va. Apr. 3, 2012) (italics added) (report and recommendation adopted by Malibu Media, LLC v. Does 1-23, 2012 WL 1999640 (E.D.Va. May 30, 2012)); Malibu Media, LLC v. Does 1-34, 2012 WL 1792979 at *2 (D.Md. May 15, 2012)

[8] The Plaintiff states in his motion that "BitTorrent is one of the most common peer-to-peer file-sharing protocols...it has been estimated that users...account for over a quarter of all internet traffic". II(14)

> [T]he distributed nature of the BitTorrent network means that at least some of the Doe Defendants likely obtained the seed piece at issue from users not named in the Complaint.
> Malibu Media, LLC v. Does 1-34, supra, 2012 WL 1792979 at *2; Patrick Collins, Inc. v. Does 1-44, supra, 2012 WL 1144854 at *6

> plaintiff's 'hash identifier' argument still failed to demonstrate that the defendants shared data with each other
> (quoting Patrick Collins, Inc. v. Does 1–54, 2012 WL 911432 at *5 (D. Ariz. Mar. 19, 2012))

> what plaintiffs have alleged is that defendants (or others using or spoofing defendants' IP addresses) have shared pieces of the same digital copy of plaintiffs' works with others using the BitTorrent protocol. There is nothing suggesting with any specificity that any defendant shared those pieces with another defendant
> (Malibu Media, LLC v. Does 1-23, supra, 2012 WL 1999430 at *3)

Completely aside from technical discussions of the BitTorrent protocol, the individual Defendants still have no knowledge of each other, nor do they control how the protocol works, and Plaintiff has made no allegation that any copy of the work they downloaded came jointly or in part from any of the Doe defendants.

The issue of improper joinder of defendants is quite apparent with this action. There is no conceivable way a joint judgment could be obtained against the unrelated John Doe defendants. In the present case, the Plaintiff has the burden of pleading that joinder is proper. However, even with the most favorable reading of Plaintiff's Complaint, the Complaint does not assert anything beyond mere legal conclusions, and does not satisfy the requirements for proper joinder: It does not allege any facts that would lead one to believe that the defendants acted in concert, worked together, or took any action that would constitute the same transaction or occurrence and it certainly does not assert plausible grounds for relief against the Doe defendants. The only similarity is that defendants allegedly infringed on the same pornographic movie, albeit on different days, different times, and different ways.

The factual scenarios involved for the defendants are all distinct, and become the basis for distinct defenses. For example, John Doe 1 could have shared absolutely no files, and the IP address could be incorrectly listed due to technical error, John Doe 2 could own a public computer in a coffee shop, John Doe 3 could have had her computer utilized by her house guest, John Doe 4's internet connection could have been used without his knowledge or consent by a neighbor, etc. Many possible factual scenarios exist in this matter,

It is an unforgivable stretch of the imagination to claim that two individuals who allegedly conducted substantially similar activity over the course of 2 months are properly joined defendants. Considering the decentralized nature of the BitTorrent protocol, this is akin to a nationwide retailer suing together all the people that it alleges shoplifted the same specific item from any store branch for over a period of two months, and then accusing all the alleged thieves of working together.

Moreover, the Defendants do not know each other; they reside in different locations, each has been accused of downloading in a different manner on different days at different times. Each Defendant has differing interests in litigation and would likely file separate motions. It is only due to the instant motion by the Plaintiff that the Defendants share any relationship, common interests, or facts.

Joining unrelated defendants in one lawsuit may make litigation less expensive for Plaintiff by enabling it to avoid the separate filing fees required for individual cases and by enabling its counsel to avoid travel, but that does not mean these well-established joinder principles need not be followed here. The different factual and legal defenses will undoubtedly give rise to an wide array of motions, which the Court could manage most efficiently by severing the Defendants.

Because this improper joining of these Doe defendants into this one lawsuit raises serious questions of individual fairness and individual justice, the Court should sever the defendants and "drop" Does 2-22 from the case.

**2) The person using a device connected to the internet at any given time is not necessarily the individual to whom an implicated Internet Protocol (IP) address is registered.**

The courts have previously recognized the fact and implications that the person to

whom an IP address is registered may not be the only individual who can access the internet through that address. In Case 2:II-cv-03995, the Honorable Gary Brown noted that "it is no more likely that the subscriber to an IP address carried out a particular computer function-here the purported illegal downloading of a single pornographic film-than to say an individual who pays the telephone bill made a specific telephone call" [p. 6]

Courts again have upheld this simple yet utterly logical idea: an IP address is not a unique personal identifier and is not a Copyright Infringer. As the Central District of Illinois Court noted:

> [Plaintiff] ignores the fact that IP subscribers are not necessarily copyright infringers. Carolyn Thompson writes in an MSNBC article of a raid by federal agents on a home that was linked to downloaded child pornography. The identity and location of the subscriber were provided by the ISP. The desktop computer, iPhones, and iPads of the homeowner and his wife were seized in the raid. Federal agents returned the equipment after determining that no one at the home had downloaded the illegal material. Agents eventually traced the downloads to a neighbor who had used multiple IP subscribers' Wi-Fi connections (including a secure connection from the State University of New York).
> VPR Internationale v. Does 1-1017, Case No. 2:11-cv-02068-HAB, Dkt. 15, at 2 (C.D. Ill April29, 2011).

In addition to the fact that the defendants have been improperly joined, the Order granting leave to serve third-party subpoenas should be vacated because the technology utilized to identify individual defendants for the alleged copyright infringement is unreliable and insufficient to show a volitional act of copyright infringement.[9]

There are many circumstances in which the person to whom an Internet Protocol address may be registered is not the only person able to access the internet through that address. These are discussed at length in a Declaration (Case 2: 12-cv-02084-MMB Document

---

[9]See James Temple, Stelle Hansmeier drops suit against 'porn granny', San Francisco Chronicle, Aug. 31, 2011, http://www.sfgate.com/business/article/Steele-Hansmeier-drops-suit-against-porn-granny-2332544.php, Attached as Exhibit B.

9). A copy of this Declaration is attached.

More specifically, there is software capable of impersonating and/or falsifying an IP address ("spoofing").[10] Because IP addresses indicated on Plaintiff's subpoenas are unreliable, and are not associated with any individual, Plaintiff cannot base its subpoenas on such unreliable information.[11]

Moreover, to prove infringement, a plaintiff must first prove that the defendant copied the protected work (see Kelly v. Arriba Soft Corp., 336 F.3d 811, 817 (9th Cir. 2003) ("the plaintiff must show ownership of the copyright and copying by the defendant")), and that the copying was a result of a volitional act. See Religious Tech. Ctr v. Netcom On-Line Commc'n Servs., Inc., 907 F. Supp. 1361, 1369-70 (N.D. Cal. 1995). However, Plaintiff's allegations are woefully inadequate and do not, and cannot account for numerous issues, from open wireless networks being illegally invaded, IP address spoofing, computers that have been "hacked" and are being controlled by external parties, to human and collection errors. Since as a matter of law, an IP address is not a person under any direct infringement analysis, it is simply logical by extension that an unreliably harvested IP address fails to allege any knowledge of or contribution to any infringing activity.

Based on the technological ease with which wholly innocent Defendants can be so easily falsely identified—for example when the neighbor, unbeknownst to anyone, illegally executing a BitTorrent protocol through a putative Defendant's wireless signal, or perhaps a person simply accessing through increasingly popular free public "Wi-Fi"—coupled with the devastating effect such a false accusation could have, Plaintiff's allegations fail to provide sufficient accuracy, nor a volitional act associated to an account holder sufficient to support its claim. Thus, the Order granting leave to serve third party subpoenas should be vacated and the subpoena should be quashed.

---

[10]See e.g., http://Proxy.org/.

[11]A more thorough discussion of BitTorrent technology can be found in Boy Racer, Inc. v. Doe, 2011 WL 3652521 (N.D.Cal. 2011).

Even a valid Media Access Control (MAC) address (widely and incorrectly thought to be permanently linked to a specific network device) may often indicate only the router connected to the internet and cannot be relied upon to determine who accessed the internet at any particular time.

The determination of devices connected to the internet through an IP address is often limited to the first in a chain of devices. With the advent of the wireless router, often this will be the only device that can be identified. However, ownership of a wireless router, even a secured one, is not tantamount to being the only possible user of the device. Therefore, even the MAC address logged by the Internet Service Provider is of limited and possibly no value in determining who accessed the internet at a given moment or even what computer or other device was used to do so.

In addition, the MAC address sought by the Plaintiff provides no assurance of the identity of the computer hardware, much less the individual user, as MAC addresses themselves can be falsified[12].

Furthermore, most ISPs do not store MAC address data and they have no ability to detect MAC addresses that have been falsified. Because the technology utilized by Plaintiff to "identify" Defendant is undoubtedly unreliable, Plaintiff is surely incapable of accurately verifying individuals who downloaded copyrighted material, and from where the material is downloaded.

This is discussed in more detail in the Declaration referenced above. This has explicitly been recognized in the courts by Judge Gary R. Brown who wrote in RE: BITTORRENT ADULT FILM COPYRIGHT INFRINGEMENT CASES (Case 2:11-cv-03995-DRH-GRB Document 39) that:

> unless the wireless router has been appropriately secured (and in some cases even if it has been secured), neighbors or passersby could access the Internet using the IP address assigned to a particular subscriber and download the plaintiff's film.

---

[12] http://www.cs.wright.edu/~pmateti/InternetSecurity/Lectures/WirelessHacks/Mateti-WirelessHacks.htm

As one court noted:

> In order to allow multiple computers to access the internet under the same IP address, the cable modem may be connect to a router, or may itself function as a router, which serves as a gateway through which multiple computers could access the internet at the same time under the same IP address. The router could be a wireless device in which case, computers located within 300 feet of the wireless router signal could access the internet through the router and modem under the same IP address. The wireless router strength could be increased beyond 600 feet if additional devices are added.

### 3) The inability to identify who actually accessed the internet through implicated IP and MAC addresses introduces an unacceptable degree or uncertainty with regard to the identification or actual wrongdoers.

If, as may often be the case, it is not possible to identify the device used to access the internet, much less the person operating the device, simply classifying all persons to whom implicated IP addresses are registered as offenders creates a significant possibility, even probability if repeated often enough, that a number of persons who have done no wrong will be served and possibly elect to settle claims out of court as an expedient. For some this may be a simple business decision: it will cost less to settle than to litigate; for others who lack the financial resources to mount an adequate defense, the "choice" is forced upon them. This creates the potential for a coercive and unjust settlement and this has also been recognized by the courts in various jurisdictions.

The Honorable Gary R. Brown writing on Case 2: ll-cv-03995 (document 39) when evaluating the potential for coerced settlements noted that:

> Many courts evaluating similar cases have shared this concern. See, e.g., Pacific Century Int'l, Ltd v. Does 1-37-F. Supp. 2d--, 2012 WL 26349, at *3 (N.D. IlL Mar. 30,2012) ("the subscribers, often embarrassed about the prospect of being named in a suit involving pornographic movies settle"); Digital Sin, 2012 WL 263491, at 3 * ("This concern and its potential impact on social and economic relationships, could impel a defendant entirely innocent of the alleged conduct to enter into an extortionate settlement") SBO Pictures, 2011 WL 6002620, at *3 (defendants, whether guilty of copyright infringement or not would then have to decide whether to pay money to retain legal assistance that he or she illegally downloaded sexually explicit materials, or pay the money demanded. This creates

great potential for a coercive and unjust 'settlement'"). [po 18]

The Honorable Harold A. Baker noted when commenting on VPR Internationale v. DOEr., 1017 (2:11-cv-02068-HAB -DGB # 15), that:

> Orin Kerr, a professor at George Washington University Law School, noted that whether you're guilty or not, "you look like a suspect."3 Could expedited discovery be used to wrest quick settlements, even from people who have done nothing wrong? The embarrassment of public exposure might be too great, the legal system too daunting and expensive, for some to ask whether VPR has competent evidence to prove its case. In its order denying the motion for expedited discovery, the court noted that until at least one person is served, the court lacks personal jurisdiction over anyone. The court has no jurisdiction over any of the Does at this time; the imprimatur of this court will not be used to advance a "fishing expedition by means of a perversion of the purpose and intent" of class actions. Order, die 9. [po 3]

Magistrate Judge Harold R. Loyd writing in regard to "Hard Drive Productions v. Does 1-90, C/1-03825 HRL" stated:

> Here, plaintiff has failed to allege that its claims against the 90 Doe defendants arise from "a single transaction or a series of closely related transactions." Instead, plaintiff provides a list of all 90 Doe defendants, identified by IP addresses, and the date and time they each appeared in the swarm over a period of 63 days. See Complaint, Exh. A. Plaintiff also alleges that each Doe defendant "entered the same exact BitTorrent swarm and "reproduced and distributed the Video to multiple third parties." Complaint ~29. But, plaintiff's counsel admitted at the hearing that plaintiff could not truthfully allege that any of the Doe defendants actually transferred pieces of the copyrighted work to or from one another. [p. 10, emphasis added]

In Case 2:11-cv-03995 which addressed three cases (Malibu Media, LLC v. John Does 1-26, CV 12-1147 (J..)) (GRB). Malibu Media, LLC v. John Does 1-1I, C'V 12-1I50 (LDW) (GRB), and Patrick Collins, Inc. v. John Does 1-9, CV 12-1154 (ADS) (GRB)) U.S. Magistrate Judge, the Honorable Gary Brown noted that:

> "These developments cast doubt on plaintiff's assertions that "[t]he ISP to which each Defendant subscribes can correlate the Defendant's IP address to the Defendant's true identity." See, e.g., Malibu 26, CompL At ~9, or that subscribers to the IP addresses listed were actually the individuals who carried out the complained of acts. As one judge observed:

> The Court is concerned about the possibility that many of the names and addresses produced in response to Plaintiff's discovery request will not in fact be those of the individuals who downloaded "My Little Panties # 2."
> The risk is not purely speculative; Plaintiff's counsel estimated that 30% of the names turned over by ISPs are not those of individuals who actually downloaded or shared copyrighted material. Counsel stated that the true offender is often "the "teenaged son ... or the boyfriend if it's a lady." Alternatively, the perpetrator might turn out to be a neighbor in an apartment building that uses shared IP addresses or a dormitory that uses shared wireless networks. The risk of false positives gives rise to the potential for coercing unjust settlements from innocent defendants such as individuals who want to avoid the embarrassment of having their names publicly associated with allegations of illegally downloading "My Little Panties # 2" [pps. 7 -8, citations omitted in the original, emphasis original].

Judge Brown also observed that another judge had previously noted [citations omitted in the original]:

> the ISP subscriber to whom a certain IP address was assigned may not be the same person who used the Internet connection for illicit purposes... By defining Doe Defendants as ISP subscribers who were assigned certain IP addresses, instead of the actual Internet users who allegedly engaged in infringing activity, Plaintiff's sought-after discovery has the potential to draw numerous internet users into the litigation, placing a burden upon them that weighs against allowing the discovery as designed. [ibid, p. 81]

Finally, also writing in case 2: ll-cv-03995, Judge Brown described the litigation practices in cases where pre-service discovery is the basis for identifying putative defendants as "abusive" and went on to state:

> Our federal court system provides litigants with some of the finest tools available to assist in resolving disputes; the courts should not, however, permit those tools to be used as a bludgeon. As one court advised Patrick Collins Inc. In an earlier case, "while the courts favor settlements, filing one mass action in order to identify hundreds of doe defendants through pre-service discovery and facilitate mass settlement, is not what the joinder rules were established for."
>
> > Patrick Collins, Inc. v. Does 1-3757, 2011 U.S. Dist. LEXIS 128029, at *6-7 (N.D.Cal. Nov. 4, 2011).

Based on the issues detailed above, Defendant requests that the subpoena issued to its ISP be quashed by dismissing Defendant from this suit due to Plaintiff's misjoinder and

failure to make a prima facie showing of personal jurisdiction, or by implication of severing the Defendant from this suit. This would follow the trend of other courts throughout the nation, all of which have quashed subpoenas issued by Plaintiff or similar litigants due to the issues of misjoinder or lack of personal jurisdiction.[13]

Notwithstanding the foregoing, FRCP Rule 26(c) provides that, upon moving the Court and for good cause shown, the court may make any order to protect a party or person from missuing an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. The discretion provided to the Court to prohibit or limit discovery is broad, and is merely reviewed on an abuse of discretion standard.[14] Moreover, because the potential for invasion of privacy is inherent in the litigation process, a court should act to protect the privacy of the affected person.[15]

In the present case, the risk to the Defendant of annoyance, embarrassment, and oppression is extraordinarily high. Plaintiff produces explicit hardcore pornographic films. Even though the I deniy sharing any such film, the I now face an inherent risk of embarrassment if my name is associated with the alleged sharing of such a pornographic film. As such, when an internet search for a particular Defendant yields results indicating the individual allegedly shared obscene pornographic films such as the ones mentioned, then

---

[13] Patrick Collins, Inc, v. Does 1-1,219, Case 4:10-cv-04468-LB (D. Cal. 2011); Digiprotect USA Corp. v. Does 1-266, No. 10 Civ. 8759 (S.D.N.Y., 2011); Patrick Collins, Inc. v Does 1-118, No. 3:10-CV-92 (N.D.W.V. 2010); Patrick Collins, Inc. v Does 1-281, No. 3:10-CV-91 (N.D.W.V. 2010); Digiprotect USA Corp. v. Does 1-240, No. 10 Civ. 8760 (S.D.N.Y., 2011); Diabolic Video Productions, Inc. v Does 1-2099, No. 10-cv-5865-PSG (N.D. Cal, 2010); Raw Films, Ltd., v John Does 1-32, No. 3:11cv532 (E.D. Va., Oct. 5, 2011); BMG Music v. Does 1-203, 2004 WL 953888 (E.D. Pa. Apr. 2, 2004); Millennium Tga Inc. v. Does 1-21, No. 11-2258 SC (N.D. Cal. May 12, 2011); Boy Racer, Inc. v. Does 1-60, No. C 11-01738 SI (N.D. Cal. Aug 19. 2011); IO Group, Inc. v. Does 1-435, No. 10-4382, 2011 WL 1219290; (N.D. Cal. Jan. 10, 2011); Lightspeed v. Does 1-1000, No. 10 C 5604 (N.D. Ill. March 31, 2011); On the Cheap, LLC v Does 1-5011, No 3:10-cv-04472-BZ (N.D. Cal Sept 6, 2011); West Coast Productions v. Does 1-2010, No. 3:10-CV-93 (N.D. W.Va., Dec. 16, 2010); Laface Records, LLC v. Does 1-38, 2008 WL 54992; (E.D.N.C. Feb. 27, 2008).
[14] McCarthy v. Barnett Bank of Polk County, 876 F.2d 89, 91 (11th Cir. 1989).
[15] See in re Alexander Grant & Co. Litigation, 820 F.2d 352, 355-56 (11th Cir. 1987).

embarrassment and damage to an individual's reputation occurs the moment defendants' name is searched. It will not matter if Defendant is later vindicated upon an adjudication on the merits in any future case. The Plaintiff in this action recognizes this, and uses this fact to facilitate and coerce settlements from individuals like Defendant who simply want to protect their name and the embarrassment and harassment of having their name associated with pornography.

Thus, at the very minimum, Defendant requests that any information pertaining to its identity remain sealed and confidential, or that the Court issue some other form of protective order to prevent annoyance, embarrassment, or oppression as justice requires.

## CONCLUSION

Plaintiff's instant action is an abuse of the judicial system and nothing more than an attempt to take advantage of the 22 defendants listed in this action. On one hand, Plaintiff attempts to circumvent traditional safeguards of civil procedure by joining, with tenuous allegations, defendants that share no common facts, while Plaintiff simultaneously avoids contributing to the judicial system by circumventing costly filing fees.

Plaintiff has attempted to extract low settlements from thousands of defendants, throughout the nation, in such a way that it makes little economic sense for the defendants to resist settling with the Plaintiff even if they did nothing wrong. A cursory analysis of the other cases similar to this one indicate that the Plaintiff has no intention of actually pursuing a lawsuit against the defendants. Rather, the Plaintiff wants to simply threaten unsophisticated defendants with expensive litigation and the stigma of having their names tarnished by being associated with obscene pornographic movies. This Court should not condone or permit such activity.

For the reasons set forth above, Defendant respectfully requests this Court GRANT the Defendant's Motion and provide Defendant the following relief:

(1) Dismiss the Defendant, or in the alternate, sever Defendant due to Plaintiff's improper joinder of 22 defendants and the failure to make a prima facie showing of personal jurisdiction;

(2) Quash the subpoena at issue;

(3) To the extent a subpoena is not quashed, grant a protective order sealing and preventing the disclosure of any information obtained through a subpoena;

(4) Sanction Plaintiff and award Defendant reasonable attorney's fees incurred with bringing this Motion; and,

(5) Provide any further relief to Defendant that is just and proper.

Dated: 7/06/2012

Respectfully submitted,

*s/John Doe*
John Doe 10
e445a98@hotmail.com
*Pro se*

## CERTIFICATE OF SERVICE

I hereby certify that on 7/06/2012, I served a copy of the foregoing document, via US Mail, on:

*John Doe*

Fiore & Barber, LLC
425 Main Street, Suite 200
Harleysville, PA 19438